UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**ROBERT T. ANDERSON**,                                      Case No. 3:14-cv-00532-KI

                Plaintiff,                         OPINION AND ORDER

    v.

**XEROX CORPORATION, a foreign
corporation**,

                Defendant.


      Glenn Solomon
      1001 SW Fifth Avenue, Suite 1220
      Portland, OR 97204

            Attorney for Plaintiff

      Gordon L. Osaka
      Attorney at Law, P.C.
      1000 SW Broadway, Suite 940
      Portland, OR 97205

Stephen L. Scott
The Kullman Firm
600 University Park Place, Suite 340
Birmingham, AL 35209

      Attorneys for Defendant

KING, Judge:

Plaintiff Robert Anderson brings a complaint alleging disability discrimination, age discrimination and sexual orientation discrimination against defendant Xerox Corporation.[1]

Pending before me is defendant's Motion to Compel Arbitration and to Dismiss [5].[2]

## ALLEGED FACTS

Anderson began working for defendant on or around July 1, 2007.  At the time of his employment application a month earlier, defendant reports Anderson "electronically" initialed (along with other documents) an acceptance of defendant's Dispute Resolution Plan ("DRP"):

> I have applied for employment with [defendant].  I recognize that [defendant] has adopted a Dispute Resolution Plan ("DRP") effective April 13, 2002 as the exclusive remedy for resolving the vast majority of workplace concerns and disputes.  I understand and agree that the DRP will be the exclusive means for resolving any dispute or claim concerning my application for employment or the terms and conditions of my employment with [defendant].  I understand that [defendant's] consideration of my application for employment and any offer of employment that may be made to me are contingent on my acceptance of the DRP as the exclusive means for resolving all disputes covered under the DRP. . . . I understand that by signing this document, I am waiving any right I might otherwise have to have a jury or judge resolve any claim I might have against [defendant].

---

[1]Defendant contends Anderson erroneously sued Xerox Corporation.  Anderson was employed by Xerox Commercial Solutions, Inc., which is a subsidiary of Xerox Business Services, LLC ("XBS").  XBS is a subsidiary of Xerox Corporation.

[2]Anderson's response to defendant's motion was late.  It was due July 14, 2014 (14 days pursuant to LR 7-1, plus 3 days for service pursuant to Fed. R. Civ. P. 6(d) and LR 6), but Anderson filed it on July 16, 2014.  I consider the filing despite its untimeliness.

Def.'s Ex. A-3.  The initials "rta" appear at the bottom of the page.

According to defendant, Anderson also "electronically" acknowledged reviewing the

Employee Guidebook on June 19, 2007, which included the following paragraph:

> [Defendant] has adopted a Dispute Resolution Plan as the exclusive means of
> resolving the majority of work-related problems.  Its purpose is to give employees
> flexible options for airing and settling almost every kind of workplace conflict,
> ranging from minor, everyday misunderstandings to violations of legally protected
> rights.

Def.'s Ex. A-5, at 58.

On September 14, 2012, defendant e-mailed Anderson and other employees a revised

version of the DRP, instructing them to "review the DRP carefully because the changes and

updates impact your legal rights."  Def.'s Ex. A-6.  The notification emphasized that the revised

DRP would become effective 30 days later and that "[a]cceptance of the DRP, as revised, is a

condition to your continued employment after that date."  Id.  It reiterated, "If you do not wish to

accept and be bound by the terms of the revised DRP, you must terminate your employment

before the Effective Date."  Id.  Defendant submitted evidence demonstrating Anderson opened

the e-mail that same day.  Anderson continued his employment after receiving the e-mail.

Anderson also completed a New Hire Course on August 10, 2007 in which the DRP was

explained.  Finally, Anderson completed annual training on September 25, 2011 and again on

September 20, 2012 in which the DRP program was covered.  The DRP is posted on defendant's

intranet site.

The DRP itself is approximately 17 pages, and is "designed to provide a program for the

quick, fair, accessible, and inexpensive resolution of all Disputes" between defendant and all

employees.  Def.'s Ex. A-1, at 1 (Sept. 2012); see also Ex. A-2, at 2 (Jan. 2002).  It applies to all

employees, other than those covered by a collective bargaining agreement, and applies to all disputes involving a violation of a legally protected right.

> Employment, consideration for employment, or continued employment, and other valuable consideration after the applicable Effective Date of the DRP constitute consideration and consent to be bound by the DRP, including its mandatory arbitration provisions, by the Applicant and/or Employee, on the one hand, and the Company, on the other hand, during and after the employment relationship.

Def.'s Ex. A-1, at 7; see also Def.'s Ex. A-2, at 7 (slightly different language).

## LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The court must determine whether a written arbitration agreement exists and whether the agreement "encompasses the dispute at issue," Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). In determining whether a valid arbitration agreement exists, state-law principles of contract interpretation apply. Nguyen v. Barnes & Noble, Inc., __ F.3d __, 2014 WL 4056549, at *3 (9th Cir. Aug. 18, 2014). The party challenging enforceability of the arbitration agreement bears the burden of proving the claims are not arbitrable. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000). However, when a party contends no agreement to arbitrate was made, the court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Sanford v. MemberWorks, Inc., 483 F.3d 956, 963 n.9 (9th Cir. 2007).

## DISCUSSION

Anderson does not dispute any of the terms of the arbitration agreement or whether it could theoretically apply to his dispute. He offers no argument other than that he never entered into any arbitration agreement with defendant. Specifically, he testifies in his declaration: "I neither signed, nor initialed, electronically or otherwise, any document whereby I accepted arbitration or defendant's so called Dispute Resolution Plan (DRP) as the means to resolve any dispute with defendant or its predecessor related to my employment." Anderson Decl. ¶ 3. He also testifies that he was "not aware any time during the course of my employment with the defendant or its predecessor that acceptance of the so called DRP was a condition of my employment." Id. at ¶ 4.

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally. . . should apply ordinary . . . principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Whether a contract exists is a matter of law for the court. Dalton v. Robert Jahn Corp., 209 Or. App. 120, 132, 146 P.3d 399 (2006). "Oregon subscribes to the objective theory of contracts. In determining whether a contract exists and what its terms are, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts." Id. (citation omitted).

Here, Anderson does not dispute that he received the September 14, 2012 revised DRP, received the defendant's Employee Guidebook in which the DRP is discussed, and that defendant's exhibits demonstrate he received subsequent training about the DRP. He also does not dispute that he continued to work for defendant following each of these events. By continuing to work, Anderson was aware of and accepted defendant's employment term that all

disputes concerning his employment must be resolved via arbitration. <u>Fish v. Trans-Box Sys.,</u> <u>Inc.</u>, 140 Or. App. 255, 260, 914 P.2d 1107 (1996) (plaintiff became aware he would not receive health benefits; when he continued working he accepted defendant's modification of the employment contract); <u>see also</u> <u>Hreha v. Nemecek</u>, 119 Or. App. 65, 67-68, 849 P.2d 1131 (1993) ("Generally, a person's continued employment after a personnel handbook is distributed may be sufficient consideration to bind the employee to any terms of the handbook that are contractual in nature.").

Additionally, even giving him the benefit of the doubt, Anderson's statement that he did not initial any document accepting arbitration, without offering any explanation for his initials displayed on his employment documents, is insufficient to draw into question his acceptance of the arbitration agreement.[3] <u>See</u> <u>Cadaval v. Dean Witter Reynolds, Inc.</u>, 703 F. Supp. 922, 924 (S.D. Fla. 1989) (statement that "they do not remember signing [the agreements] and that these agreements *may* be forgeries" was insufficient to deny arbitration). Defendant offers evidence that, in order to apply for employment, Anderson was required to log into a computer system, enter personal information, and click through a series of documents on which he manually entered his initials in order to proceed to the next step. In that series of documents, he entered his initials agreeing to be bound to the DRP. Indeed, Anderson "could not complete the application packet until he initialed his agreement to the DRP." Decl. of Kelly Berkemeier ¶ 16.

---

[3] Anderson does not dispute that an electronic signature is binding. <u>See</u> 15 U.S.C. § 7001 (federal E-Sign Act making electronic signature enforceable); ORS 36.740 (similar Oregon law).

Based on the overwhelming evidence that Anderson knew about and consented to defendant's arbitration agreement, I grant defendant's motion to compel arbitration.[4]

The FAA provides for a stay should a court determine arbitration is required. 9 U.S.C. § 3. Rather than a stay, defendant seeks dismissal pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). This court may exercise its discretion and dismiss the case if the claims are covered by an arbitration clause. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988); see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004). I find that dismissal is appropriate as no claims will remain for the court to resolve once arbitration is completed.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Compel Arbitration and to Dismiss [5] is granted. This case is dismissed with prejudice.

IT IS SO ORDERED.

DATED this ____21st____ day of August, 2014.

                      _/s/ Garr M. King_____
                      Garr M. King
                      United States District Judge

---

[4]Although not raised by Anderson, I have considered whether Anderson's agreement to arbitrate was "knowing." The Ninth Circuit requires any agreement to waive the right to a judicial forum for civil rights claims in exchange for employment to be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question. Nelson v. Cyprus Bagdad Copper Corp., 119 F.3d 756, 762 (9th Cir. 1997). The notices alerted Anderson that the DRP covered virtually all legal disputes concerning his employment, specifically listed both the Age Discrimination in Employment Act and the Americans with Disabilities Act among others in the DRP's definition of "dispute," notified him that he waived his right to a judge and jury, and expressly made Anderson's employment contingent on his acceptance of the DRP. I find Anderson's agreement to arbitrate was "knowing."